In the past... ... 1, 2, 3, or 4 and ending here. Thank you. We need a bandage right here. And Mr. Kleinman, I am correct that you have not reserved any time for rebuttal. Correct. You are welcome to proceed. Thank you, Judge. Okay. Please, the Court, my name is Bernard Kleinman, I represent the appellant, Brian Rodriguez, in this case. This case revolves around two central issues. The first is whether, in fact, what was called a firearm was, in fact, a firearm, as that's defined under 924C. The second issue is how the plea proceeding was conducted and the failure, phrases in the context of ineffective assistance, which I'm well aware is normally brought before the district court rather than in front of the circuit. However, the circuit has ruled a number of times that it does have jurisdiction on an ineffective assistance issues where the facts are, I guess, overwhelming and it's clear that there has been a breach of the defendant's rights under the Sixth Amendment. The problem here, as I said, is that the way the plea proceeding took place and what happened during that colloquy was never clear that it was, in fact, number one, a firearm as that's defined under the statute. The video of the megapack robbery did not show Mr. Rodriguez holding what was purported to be... Let me ask you this. Yes, ma'am. Your client allocated that it was a firearm. It did. All right. So to the extent he did so, I'm not sure why the district court was required to ask him to state his understanding of what a firearm constituted. I mean, the word is used in the statute. He allocated according to that. I would think that's sufficient. Well, with all due respect, I don't believe that really is sufficient because a firearm is specifically defined and the courts have really... So you're saying any allocution for this crime requires the court to not only have the defendant admit that the crime involved a firearm, but to ask him to allocate to what a firearm is? Unless the plea proceeding, the plea, for example, defines what he was carrying and that it was, in fact, a firearm under 924-6. What's your support for that, that the allocation would require that? Because he's admitting to an offense and I believe he has to admit to the elements of the offense. Just saying... And the government, for example, in its response said that Rodriguez merely, quote, agreed in some substance of what the government said. Now, we did allocute that a gun was brandish and it was a firearm. However, I think there is more that should be required because the court was well aware that, for example, what looks like a gun, like, for example, the Nolan case, the court says that wasn't sufficient. It was a BB gun. And a firearm has to be something beyond even a gun. It has to be operable and be able to strike a spark and cause a projectile to come from it. And if it merely looks like a firearm and it isn't, then I think that that is an element of the statute that really has to be defined and the government can certainly present that evidence and say at the plea proceeding that the firearm was a 9mm Glock and it was operable and is that the firearm that was used by you or your co-conspirator during the robbery. And it can certainly say... You can say, yes, but that didn't occur here. And I think that when you're dealing with, obviously, someone who doesn't understand... Any defendant doesn't understand the niceties of what is a firearm and what is not a firearm. That's defined under the statute and where the courts have interpreted it. I think that that is really something that needs to be narrowly driven down. That gets to the fact that you had counsel and you're saying counsel was ineffective. Yes, I think that... I'm sorry, Your Honor. I'm interrupting, Your Honor. Please. I think that the ineffective assistance here goes to the failure of the trial level counsel, district court counsel, rather, to actually make sure that, in fact, it was a firearm that was operable and it was within the definition of 924C. And its failure to do that was, I believe, ineffective assistance. The ineffective assistance actually first arose when he didn't... When trial counsel failed to file the notice of appeal. That issue, as the court is well aware, was... You don't have any evidence... You don't have any evidence that counsel had not satisfied himself that it was a firearm. No, I do not, Your Honor. I don't have any evidence, Judge LaValle, that, in fact, he... That's one of the problems of bringing an ineffective assistance claim in the court of appeals when it hasn't been raised in the district court. I understand. How can we rule on that when we have none of the information? Well, actually, that's why the release that I'm asking for is a remand back to the district court for further proceedings. Now, I understand, Judge, that... Well, why did you bring a 2255 in the district court to begin with and then it would have been adjudicated there? But I feel, as I said before, that the issues here are... really go to the core of the way the... I'm not sure what our remand is on. Is it a remand for resentencing? Is it a remand to allow him to withdraw his guilty plea? What if the remand would ask for this hearing in order to do what? He signed a plea agreement, and that's a contract, and that's binding upon him. Well, not necessarily if he signed it with ineffective assistance of counsel. That's true. I am a little uncertain what ultimate release you want in this case. What I'm asking this panel to do is to vacate the judgment, vacate the plea, remand it to Judge Roman, and have a new proceeding take place and determine whether, in fact, he was pleading guilty to what the statute requires. And, in fact, as I said, furthermore, that the language of the plea agreement and the language elucidated at the plea proceeding, the and-or differentiation, whether it was and, aiding and abetting, or... Your argument is that, no, it wasn't enough. So would we be remanding for a further plea allocation? I'm trying to figure out what we're telling the district judge is the purpose of the remand. I'm sorry. The purpose of the remand is to go through a much more detailed allocution and make a determination, in fact, if Mr. Rodriguez understood, first of all, if he was, in fact, brandishing the weapon, and, number two, if it wasn't... Is he going to take the position on remand that he wasn't? That it was not him who was brandishing the firearm, correct. I understand. I mean, that everyone knows. That's clear from the record. Is he going to take the position on remand that it wasn't a firearm or that he didn't know it? That's correct. And so that would result in the refusal of the district court to accept the guilty plea? Correct. A vacate of... Your client wants to go to trial? If the result is that, yes, he will go to trial. Let me ask you, with respect to ineffective assistance of counsel, since you said we want to look at the complete record, counsel argued, in mitigation of your client's sentence, that he didn't challenge that it was a firearm, like the co-defendant did. I mean, he argued that to the district court as a positive factor for his client to try to get sentencing consideration. So this was a matter that counsel had obviously considered and strategically decided was in his client's interest to use to get a better sentence, wasn't it? And why isn't that a strategically acceptable choice by counsel? Because the end result of an 84-month consent sentence... Counsel can't always guarantee a positive result, but he can make the strategic choice that this was a factor to be used not to challenge the gun, but to argue that his client didn't challenge it. But as you'll see, I mean, what Ms. Levin argues regarding Molina, you'll see that that whole issue of whether it was a firearm, in fact, really goes as an essential part of this. And if prior level counsel had, in fact, done his proper job of making the determination that it was, in fact, a firearm on the 924C, then, yes, that was the right decision to make. If I understand correctly, you're making the argument that it is unreasonable for a defense counsel to make a strategic decision to not challenge a firearm label under these facts. I mean, that it's a per se, I mean, this sounds like a per se rule, which is not what Nolan asked us to do because it's a different factor. I'm not saying it's a per se rule. What I'm saying is that, and this, you see this all the time, Your Honors, that there's always this issue of, great, he didn't make enough of an investigation. He didn't hire the expert. He didn't do whatever he or she should have done. Well, there is no, no, am I right, there was no gun recovered here? That's correct. All right, so what should counsel have done? I believe that, as in the Molina trial that came out, that was, what was branded, if I'm not mistaken, was not a firearm, and that should have been a strategic decision. The jury rejected that, though. I understand counsel argues that there were errors in forming the trial. But what are you arguing counsel should have done that he didn't do? I think he should have brought the burden of proof as it is upon the government. So he should have challenged it. He should have said the government can't prove it. Correct, correct. But his client allocated to it. His client allocated to it, but I don't believe he allocated to it, obviously based upon advice from his attorney. And, you know, he's patient. I'm sorry, Judge. You're saying he should have done that, you're saying he should have challenged it, even if he knew perfectly well, having gone over the issue extensively with his client, if he knew that it was a firearm, he would still have challenged it? If he knew that it was a firearm, he would not have challenged it, because he would have been fatified. But you have no basis for saying he didn't know it was a firearm. I have no basis because no investigation was conducted. And then we're back at it. The only investigation was talking to his client. Correct. And whatever else came after the discovery. We have nothing to say. I mean, you have not suggested that his client is going to say it wasn't a gun, it wasn't an operable gun. I don't have that information, Your Honor. Okay. Thank you. Thank you, Your Honor. Mr. Lewis. Good morning, Your Honor. Good morning. I'm Richard Levitt, along with Zach Siegel from our office. We represent Anthony Molina. We've raised two arguments on appeal, Your Honor. The first, of course, concerns inevitable discovery, and the second concerns the jury instructions with regard to firearms. I'll take them in order. First, with regard to inevitable discovery, as the Court knows, there were two robberies involved. One was the 2017 New Milford robbery, and the other was the 2019 Mayapak robbery. And there was different evidence with regard to each, and the inevitable discovery issues are somewhat different with regard to each. As to the 2017 New Milford robbery, and this, by the way, is a prime reason why this Court has required district court judges to make particularized findings of fact with regard to each piece of evidence that's offered and which is subject to inevitable discovery analysis. Because in this case, the district court judge blindly, supposedly, accepted and adopted the arguments of the government when it found inevitable discovery. But in this case, with regard to the 2017 New Milford robbery, the government never argued inevitable discovery. That is not one of the arguments that was made below. And if you look at the briefing below, it's quite clear, because it's very similar to the briefing before your honors by the government, that the argument was that Mr. Molina did not have standing to assert the exclusion of the evidence with regard to the 2017 New Milford robbery, namely the 4879 phone number, which was linked to that robbery. They never argued inevitable discovery. They only argued standing. And, of course, standing is not even part of the inevitable discovery analysis. Now, why did the government do this? The government did this because they tacitly conceded that they couldn't show inevitable discovery with regard to the New Milford robbery. In fact, when they were discussing the New Milford robbery, they pointed out that there were two phones that were found. One was Mr. Rodriguez's phone that was found when Rodriguez was arrested, and that's what contained the 4879 phone number attributable to Molina for. And the second concern, the phone that was found the same day on Mr. Molina, pursuant to the arrest of Mr. Molina. Here's what the government said with regard to the phone that was found on Mr. Molina. The sole exception to this inevitable discovery analysis is that the court would not be able to find with a high level of confidence that the government would have seized Molina's physical phone or extracted data from it, as there was no way to know whether Molina would have had his phone on him had he been arrested at another time or another place. And that was the government's argument in Document 72 at pages 50 to 51. But the precise same analysis applies to Mr. Rodriguez's phone. If the government had no way to know whether Molina would have had his phone on him had he been arrested at another time or another place, then it likewise had no way to know whether or not Rodriguez would have had his phone on him had he been arrested at another time or another place. And in fact, there are so many contingencies. The government arrested Rodriguez at the same time that it arrested Mr. Molina because it obviously didn't want one to tip off the other. And in this case, the government long had evidence, probable cause, to arrest Mr. Rodriguez, but it waited. It waited until it could arrest Mr. Molina, but it arrested Mr. Molina on a complaint that charged the Mejapac robbery only based upon evidence that was tainted. So if we didn't have the taint, you wouldn't have even had the Molina arrest when it occurred. You wouldn't have had Rodriguez being arrested when Rodriguez was arrested. And so there's no inevitable discovery argument the government has to make with regard to New Milford. That's why they didn't make the argument. That's why they argued standing, but the standing argument is irrelevant to this case. And secondly, with regard to the Mejapac robbery, there's no way that the evidence with regard to the Mejapac robbery, which again was a different phone, was not the result of the illegal March 29th warrant. It clearly was the result of the March 29th warrant, and we know that. We know that because when Mr. Molina moved to suppress the evidence, here's what the government said. The government said, well, we have now reapplied for the warrant that was issued originally on March 4th. We've now reapplied. This is what they told the judge. We've now reapplied for that warrant on March 4th, and we are confident. We are confident that that will show the link between Mr. Molina's 2454 number and the Mejapac robbery. And how do we know that that's what it will show, they say? Because we already know that there's a link. And how do they know there's a link? Because of the March 29th warrant. So they were relying on the illegal warrant to catalyze its decision to reassert the March 4th warrant and to reserve it to obtain essentially a cell site dump to prove inevitability. I think because your time is actually up on this. I have a number of questions on this, and I want to make sure that I give you an opportunity to tell me how I should be thinking about this. I understand the strictness of the inevitable discovery rule and your arguments that to simplify what you've said in great detail, that the government would not have corrected some of the errors in the warrant but for your calling them to its attention, which would not satisfy inevitable discovery. That has to be separate from learning there was an error. So I'm going to take you in a completely different direction, which is why do we have to reach inevitable discovery at all? Why doesn't the corrected warrant provide sufficient probable cause to secure information about the Molina 2454 number? And if that's right, then none of the subsequent warrants are tainted. And I say that because, again, I know this is all somewhat complicated. At the time they sought the warrant, the government did know that the 2454 number had been called on the day of the mousetrap robbery, and it was called repeatedly on that time. They also knew that it was listed to a company that they were able to draw inferences Molina worked for. But I actually don't think the question is whether there was probable cause to think Molina was involved. The question would be whether there was probable cause to think that getting information about the 2454 number would yield evidence pertinent to the robbery investigation. And I would think any number called by Rodriguez or Luria or where calls were placed to them from a number, any communication during the time of the robbery, within hours before or after, would be properly investigated. Why would that not be the appropriate way to look at this? Okay, well, for a couple of reasons. And first I'll say that that's not an argument that the government raises on appeals and it's not an argument that we've even addressed. So we can't affirm on any grounds supported by the record, and I am looking at the record here. No, I understand that. But even if the court found that the warrant could have issued, it was still issued based upon misinformation. But we apply the corrected warrant. We take out the misinformation. We leave or substitute only correct information that they knew. And at that point, I'm wondering why there's not probable cause. The court made a contrary finding. Just as it may have been wrong on the inevitable discovery, it may have been wrong on that. Well, first, I don't think it was wrong on that because the premise was that there was probable cause to believe that Mr. Molina was involved in that. And I understand the point that the court is making. But that's not the question about whether he was involved. It's whether that number was one for which investigation would have yielded pertinent evidence. Yeah, but there's no – Whoever it linked to. First, I don't think the fact that they called the number necessarily justifies the warrant. And I'm happy to brief you. I don't think that the fact that the number was called on that day justifies the warrant. Yeah, I know. I mean, you've got ample probable cause with respect to Rodriguez, Luria, and their phones. Okay? Why isn't anybody they're talking to at about the time of the robbery, that phone worth investigating or properly investigating? If the court finds that that's an issue that may drive the decision in this case, we'd like an opportunity to brief it because it's not an argument that was made below. It's not an argument that the court accepted. It's not an argument that the government has made even in this case. It's not an argument that's part of this appeal in any way. And to the extent that the court feels that that's something that might drive the court's decision, then we'd obviously like an opportunity to brief the issue. Okay, so you're not prepared to answer, really, today? No, it's not something that I'd be prepared to answer today. I haven't researched the issue. It wasn't presented by the parties. If I can have just a moment to discuss the jury instruction issue, Your Honor. With regard to the jury instruction issue- Before you do so, I'd like to ask you something else. I'd like to say first that I appreciate that, as usual, you've given this extraordinarily fine brief, which we all receive from you, Mr. Sterling. Thank you. But I was curious about a couple of different things on this point. One is the government has argued this, but isn't it correct, if pertinent, that the government did have probable cause with respect to Mr. Molina based on the informant's tip? The informant's tip, which the government did not rely on, proved reliable in that it furnished information, not only a statement that these were the people who committed the robbery, but that gave the information about their phone numbers, which then proved to be verified with respect to the other two. So the government could have issued a warrant which indisputably would have been adequate for Mr. Molina at the time. Is that not correct? No, it's not correct, Your Honor. And it's not correct because the government's argument, which they made below but is not making here, the government's argument was based on evidence that it obtained as the fruit of the March 29th warrant. As the fruit of the March 29th warrant. But up until March 29th, why is it not correct? Because there was nothing in that anonymous tip with regard to Mr. Molina that at that point had been corroborated. Well, but it's corroborated in so many other respects as to the other two people. That would be enough to establish probable cause. There was not probable cause with regard to Mr. Molina. There was not probable cause with regard to Mr. Molina. The issue is the reliability of the tipster. If the informant has proved reliable, the informant's tip is deemed reliable. So if the informant showed his reliability by showing the correctness of his information about the telephone numbers of the other two, and his reliability having been established, it applies also to the third person that he named. Yeah, but probable cause has to be resolved with respect to each defendant or each suspect. But now the tipster is reliable. The tipster is reliable, and so now his statement becomes probable cause. Well, first of all, it's not clear that that would have been sufficient to issue a warrant. Just a second. I just want to add to the petition. The government had available to it the surveillance tapes, which while they could not suffice to identify the defendants definitively, they provided further confirmation as to the general appearance, size, shape, and so forth of each of the three. It provided no confirmation with regard to Mr. Molina whatsoever. The district court did not rely on the anonymous tip to establish probable cause. The government doesn't rely on the established tip to justify that March 29th warrant either. So at this point, the court— This is a variation on what I've said to you. The question is not really—it's not an arrest warrant for Mr. Molina that they were seeking. It was a warrant to get the total and felt-like information for the number ending in 2454, which they were able not only to link to Mr. Molina, but which they knew had been called at and about the time of the robbery by one of the other robbers. And I am perplexed as to why that doesn't support probable cause to get that information. Okay, I understand the court's point, and that's a question which, again, if the court wants to consider, we would brief. But it's not something that was accepted by the district court. It's not something that's relied upon by the government at this point in time. It's just not part of this appeal. And to the extent that the court feels it's important, I respect the court's view. But it's not something that we've briefed, and I don't think it's the kind of issue that I should just react to on oral argument. I'm only deferring that to both my colleagues and also to us here at the government. You've reserved time for us, so we can let you know whether we're going to want to ask a briefing on that. Thank you. Thank you. I have another question. Yes, Your Honor. Go ahead. Say what you were going to say. No, I was going to ask if I could have a minute to address the jury instruction point. Well, why don't you answer just about the question, and we'll give you the time that we need you to talk about jury instruction. Thank you. We can answer just one more question. So am I correct, furthermore, that if the district court were to conduct a Frank's hearing as to the good faith and determined that notwithstanding the errors, the errors were made in good faith or not in bad faith, whatever the appropriate standard is, that that would defeat your arguments? Well, I mean, it might well, very frankly, defeat our argument, because that's the purpose of a Frank's hearing, to see whether or not you have to proceed to the next step, because where a warrant is issued, of course, there are certain presumptions in place. I don't know if there would be other arguments that could be made to challenge the warrant, but certainly if there were a Frank's hearing and the court found that there was no Frank's violation, that that would certainly eliminate a substantial argument that was made below. So if we were to remand, to objectively remand to the district court, directing the district court to conduct a Frank's hearing, and the district court concluded against your position to conduct a Frank's hearing, would that move the arguments that you've been making in this hearing? It might well. Again, I don't know whether there's another argument in support of suppression that could be made, but certainly one of the things that a Frank's hearing would permit, or a remand to the district court would permit, would be a further discussion of exactly what was done by whom and when. And for example, and this is an important point, I know that the court has previously, Judge Raggi, I know that you have previously addressed the corrected warrant doctrine. That's something that's been a part of the court's discussion in a previous case. And so that's an issue that was raised kind of obliquely, and Your Honor had addressed it in Gannett v. Leibovitz, but in a footnote. I think it was footnote 6, but I could be wrong. But that really doesn't apply. That corrected affidavit doctrine wouldn't apply here, because the government conceded that the FBI records did not establish certain of the facts when the FBI sought a warrant. So it's not totally clear. Well, they didn't establish certain facts. I understand that. For instance, they hadn't yet done the surveillance of your client and dialed the 2454 number. I mean, I understand there's a whole host of information, but I'm trying to freeze my review of the record as of the application of the warrant. And for the reasons I suggested to you, I thought that it might still establish a probable cause. That's what I understand you would want to freeze. Well, I would suggest also that perhaps the best place to – to the extent the court feels that that's an important part of the analysis, I would say that perhaps the court should remand to the district court and in the first instance let the district court make its own factual findings and hold, if necessary, a Frank's hearing. Again, one of the problems we have here today is that the district court simply said, I'm adopting what the government said with regard to inevitable discovery, when, in fact, with regard, for example, to Newmuffet, there was no inevitable discovery analysis whatsoever. So I don't think that it's a good idea for the court to essentially undertake the job that the district court should have been doing, and therefore to the extent the court thinks that's important, that it's an important part of the analysis, respectfully, I suggest that it should remand for further proceedings. Thank you. We'll give you some more time when we get back to talk about jury stuff. I'd like to ask Mr. Levitt one more question. Certainly. Which is, how about the Supreme Court's Nix case? The discovery which the Supreme Court found to be inevitable in the Nix case wasn't really all that inevitable. It was a good likelihood, but finding something that's been hidden is not inevitable just because you're looking for it. When Your Honor started that question, I thought you were asking about the Nix. How about the Nix? But to answer Your Honor's question, in Nix essentially the court said, look, they're already searching the area. There's no question that they would have uncovered the body, and that's why it was inevitable, because they were combing that area. I think that the cases which are a bit closer with regard to inevitable discovery would be this court's decision in Stokes and Cabasa and Heath. I think that those cases really are a lot closer to Nix, which really concerns a completely different fact pattern, and again, as I said, where the police were already combing the area they definitely would have found the body. So very briefly, with regard to the jury instruction issue. No, I'm sorry, can we handle that on rebuttal? We'll give you enough time to ask questions that are of interest. Oh, on rebuttal? Yes. Okay, thank you. And Ms. Keenan, please, and you need not worry. We'll keep you as long as we find you helpful, especially if your colleague has extra time. May I please the court? My name is Lindsay Keenan. I'm an assistant United States attorney in the Southern District of New York. I represent the government on this appeal, as I did in the district court in the investigation below. I'd like to begin with Judge LaValle's question about whether,  on whether or not there had been an incident and determined that there was no deliberate or reckless misstatement, but there was, in fact, only a negligent error, would that defeat the suppression remedy? And, in fact, it would. I would like to then turn, Your Honor. Did you speak back? I mean, in the district court, after you got this ruling? Well, you secured the ruling, but you never sought to have that finding made by the district court? No, Your Honor. We argued before the district court that the error was a negligent, inadvertent mistake, and that mistake is plain from the government's briefing and from the many records that were submitted in the district court below. On March 4, 2019, the government sought a tower log extraction warrant, which is provided to the five major cell service providers, and they return information about which phones were accessing a given cell tower at a given time. In this case, the mail pack cell tower on Route 6. The agent received, in response from Sprint, tower log records that included three phone numbers, phone numbers that he knew to be of interest in this case, the 1912, the 2454, and the 3972 phone numbers, and he mistakenly concluded that that meant that all three phone numbers were using that tower log, were using that tower, and that's the representation that was made in the warrant. But turning to the inaccuracies, the remedy for the inaccuracies is to excise them from the warrant and determine whether, without the inaccurate information, the warrant still has probable cause for the information sought. I didn't think you were relying on the corrected affidavit doctrine here. We made that argument below, Your Honor. We did not make it in our argument before this court. But because Your Honor asked a question, I urge, Your Honor, that you can affirm on any basis in the record, and as the government argued below, that warrant still had probable cause. It sets out, here's one robbery, here are two phone numbers that we know to be of interest in that robbery. We know it's a three-man crew. We know there's this black Honda. We know they come to a Verizon store around the hour of closing. Here's a second robbery. It's the exact same modus operandi. We know it's a three-man crew. We know there's a black Honda Accord. We know that they come to a Verizon store at the hour of closing. Hey, by the way, these two phone numbers of interest, they're there at this second robbery, and what is the one and only phone number that they're talking to at the time that they're using the cell tower closest to the store? It's this 2454 phone number. That warrant would issue all day, every day, and Your Honors can take comfort in that fact from the record in the district court below because similar warrants issued with respect to other phone numbers used by Anthony Molina. Those are the 4879 and 1273 warrants. Excuse me. So as the government argued below, there is sufficient probable cause for the issuance of the warrant, even excising the misrepresentations. I'd like to turn next to the inevitable discovery argument that we did make before this court. So let me just ask before you... I'm sorry, we can't hear you, Judge LaValle. Are you putting that question in the manner that Judge Raggi suggested, that the warrant is sufficient as a warrant for information about 2454, even if it's not sufficient as a warrant for information about Molina? That's right, Your Honor. The warrant is sufficient for information about a phone number  around the time of the robbery. Multiple times on the day of the robbery, the day after the robbery, and at the exact time that they're using the cell tower closest to the robbery. I thought you were also relying, though, on the fact that you did link it to Molina at that point because you had the information about the company it was registered to and his employment there, and you knew that Molina was the person who was the third robber identified by the tipster who had proved reliable. Is that the totality of the corrected evidence that would be before the judge? Yes, Your Honor. That is the totality of the corrected evidence that would be before the judge. That in January of 2018, law enforcement received an anonymous tip. That anonymous tip was well corroborated, not just with respect to the phone numbers used by Anthony Loria and Brian Rodriguez, but with respect to their home addresses and also with respect to Anthony Molina's home address. Now, I understand all this. You know, this is an argument that wasn't made by the government and that you're now pursuing because it was raised by the court, and when Judge LaValle asked you, you alluded only to part of the evidence, and I suggested to you that there was more. You're adopting that. I understand that. Anything else? Let me just ask for a clarification. The information about the tipster, as I understand the doctrine of the corrected affidavit, you look at the affidavit as it exists, you excise from it the bad information, and then you look at what remains and you see whether that is sufficient on its own without the bad information. But the affidavit that was compromised by bad information, it didn't include anything about the tipster, did it? That's correct, Your Honor. It did not include anything about the tipster, but it did include the fact that before, shortly before, and after the robbery occurred, these two phone numbers of interest were communicating with the 2454 phone number. But is your position that the corrected affidavit adds the tipster information or that having chosen not to put it in originally, it is not included? What's the government's view on this? The government's view is that the corrected affidavit doctrine adds the corrected information, that the information in the government's possession at the time contributes to the probable cause that would have existed in a corrected affidavit. I'll turn then to the inevitable discovery doctrine. I described already the evidence that was thought to be suppressed and how the error with respect to the 2454 phone number arose in the March 29th cell site warrant. So proceeding in the inevitable discovery path, we would excise, as we've discussed from that warrant, the incorrect statement. And what would happen would be the warrant still would issue with respect to the 3972 and 2454 phone numbers. At the time that that warrant issued, as your honors already have pointed out, the government was closing in not just on Anthony Molina, the person, but on Anthony Molina's 2454 phone number. At the point of excising the information from the warrant and obtaining the cell site returns, the government knew numerous facts related to the 2454 phone number. The fact that it was communicating with the phone numbers of interest before the robbery, the fact that it was communicating with the phone numbers of interest after the robbery, and the fact that it was the only phone number communicating with the phone numbers of interest at the time they were at the scene of the robbery. So if at the time the government initially sought the March 29th probable cause with respect to the 2454 phone number, what the government inevitably would have done is gone back and gotten a cell site warrant for the 2454 phone number. That cell site warrant would have reflected, as the return in fact did, that the 2454 phone number was using the mail pack tower at the time of the robbery. But I think the defense argument, at least in part, is that you would have done that because the error in the warrant would have been called to your attention. You wouldn't have done it otherwise. So the inevitable discovery doctrine, again, as I understand the defense position, does not cover what you would have done once your error is pointed out. It has to be what you would have done in the course of this investigation regardless of whether or not the warrant was defective. And that's where I'm having trouble relying on inevitable discovery as the basis for this warrant. So putting ourselves in a place where we do not know that the March 29th cell site warrant is defective, what the government would have done is exactly what the government did. It would have worked the phones. It would have reviewed the toll records. It would have seen where these phones were traveling, both before the robberies and after the robberies. And it inevitably would have closed in on Anthony Molina, his 2454 phone number, and his 4879 phone number exactly as it did. Again, I may not be making myself clear, but I understand the defense argument to be you got the information on an invalid warrant, and then, of course, you pursued it further. But what is the evidence in the record that the actions you're saying would have been taken even if there had been no warrant issued here? You need specific evidence of this inevitable discovery, and I'm hearing argument, but I'm not seeing where the evidence was that, well, we did this, we did this, we did this as a matter of course. So... Well, and if I could add a piece to that that I think is helpful when you are answering the judge's question. Is it the district court required to show us with particularity that each of those things would have been done as opposed to... And it's a reasonably high standard. So, what is the evidence and where in the district court opinion do you think that that stands? I agree, Your Honour, it is a reasonably high standard. And Judge Ramon's opinion set forth several pages of facts that were based on the more than 30 exhibits that were in front of the court at the time of the suppression briefing. And then, later in his opinion, he adopted and incorporated by reference the government's recitation of the facts that inevitably would have led to the 2454 phone number. Turning to Your Honour's question about the record evidence... But aren't some of the facts the district judge relied on your actions after you learned that the warrant information was erroneous? There are a number of facts that the district court relied on that precede the government's learning that the warrant was erroneous.  ...that would have yielded the same evidence that this warrant yielded. So, beginning in August of 2017, there's a robbery. The government collected surveillance video related to that robbery, spoke to witnesses, sent evidence off for DNA. Now, I'm aware of the steps the government took up to the warrant. I'm trying to figure out how you would have gotten this information inevitably without the effective warrant. And, see, the difficulty here is the warrant got it for you. You would have had no reason to pursue it but for your discovery that the warrant was being challenged. Is Your Honour's point that the government would have had no reason to pursue the 2454 phone number cell site history but for the notion that... Well, I think that's what the defense is saying you can't show. And so I'm trying to figure out how you would have gotten this. And you're saying, well, we would have sought it in an alternative warrant. And my point to you is the defense says yes because we pointed out to you that the warrant was defective. Otherwise, you would have had no reason to seek this information again or alternatively. Your Honour, I see that my time is near to answer your question. I think I may need a few additional minutes. Is that okay? No, of course. Okay. So, I think in the inevitable discovery world, we have to put ourselves in the place that the government was in on the morning of March 29th, 2019 before it sought this cell site warrant for three phone numbers data over a period of time. The information that the government had at that time was obtained through the New Milford robbery investigation which included at docket numbers 55-3 and 55-4 cell site warrants for two other phone numbers. And it had Anthony Loria's fingerprint. It had, on February 26th, 2019, an interview of Anthony Loria conducted by the New Milford Police Department. And then it had, on March 4th, 2019, the Tower Lock warrant. And the only way forward if we have to assume that the government does not get Anthony Molina's cell site data from a March 29th warrant is that the government proceeds with its investigation as it had been. It gets a GPS combination pen-and-ping warrant for Anthony Loria's 3972 phone number. That's on March 25th, 2019. It proceeds to arrest Anthony Loria on March 26th, 2019, seize his phone, and get a search warrant for his phone. In that phone, and the iCloud evidence from that phone, it obtains information about Anthony Molina's participation in the robberies and his phone number. So there's an alternative path. Even before the March 29th cell site warrant issues, there's an alternative path to information related to Anthony Molina's role in this robbery. The evidence here, though, is the cell site and toll information you got. Yes. And how would you inevitably have gotten that other than through this warrant? So the only way to get cell site and toll information is A, from toll records, which the government had for Anthony Loria and Brian Rodriguez's phones. Those are telling us, here's this 2454 phone number. The next way to get cell site information is through a warrant. So there's no... And you obtained a warrant, and the warrant they're saying is defective. As I understand it now from the discovery, you have to be able to show the court that, okay, you got it this way, but you would have also gotten it this other way, which wasn't tainted. Not once I found out that I had, that someone is complaining about the warrant, I would have sought another warrant. You have to show that, you know, you would have found it in a box. You would have found... You know, I don't know how, but that's actually the gap in the record, is anything that shows that this evidence of where it was and what the tolls would have shown, I don't know who got his phone records, would have been obtained, not that you would have gotten another warrant. Right, and to put a point on the question that I asked earlier, it's not just that there's an alternative remedy, it's that you meeting a high burden of showing that you would have found it, and moreover that the district court particularly went through these pieces of evidence to show us how it would have been found. And I think the district court did that, Your Honor, by adopting the government's argument at page, I believe it's A43 of its opinion, saying, see government brief, pages 49 to 50, where the government explains how these errors would have been remedied. Okay, you're hearing that this is not persuasive, and we want to give you the opportunity to show us, but if you have nothing else to say, we'll let you move on to other points. I'm just concerned about whether you have shown an evidence of this coverage. I think aside from the government would inevitably, if the March 29th warrant did not issue as to the Anthony Molina cell site records, the government inevitably would have sought another warrant using information that the government had in its possession that predated March 29th of 2019. They're saying, you know, we went into the house to search on a defective warrant, and we seized all this evidence. And then you say, well, once we found out that that warrant was defective, we would have gotten another warrant and gone in because we had probable cause. That's not enough to be inevitable discovery, is it? Well, I think, Your Honor, we're not just saying we would have gotten another warrant. Here, Your Honor, has in the record evidence numerous other warrants that the government did, in fact, obtain. So the government did not just go in... But, I mean, again, and I'm sorry if this is not helpful, but we're trying. It's not that there's an alternative way for you to get it. It's that you would have discovered it inevitably with what you had at the time. And so maybe that helps you focus on the part that we think of this week. I'm trying as well. And what we had at the time was the toll records reflecting and the tower log records reflecting these are the phone numbers that were in communication at the time of this robbery of interest. And I would point, Your Honor, to the fact in the record that the tower log from T-Mobile did not return until after the March 29th cell site warrant was issued. And so I think if the government was not waiting in anticipation for cell site data, when the tower log from T-Mobile returned on March 30th, the government would have seen that tower log was for an incorrect time period. As it was, because the investigation was moving so rapidly and the cell site data was coming in from the defective warrant, there was no reason for the government to go back to a tower log warrant. But if that information from the cell site warrant hadn't returned, the government would have looked to the T-Mobile tower log and seen that it was issued in UTC rather than in Eastern Daylight Time, Standard Time, excuse me. So can you spend a moment on the Infectious Disease Council argument as it pertains to Rodriguez and then the jury? Yes, which would Your Honor prefer me to turn to first? With respect to Rodriguez's ineffective assistance of counsel argument, I think Your Honor actually pointed to the fact that Rodriguez's counsel at sentencing argued as a point of mitigation, my client chose not. It was a strategic choice. My client chose to make an early plea and not to, as the other defendants in this case have done, challenge the fact that this was a, quote, real firearm. And I think every step of the way leading up to Mr. Rodriguez's plea indicates that this was a real firearm. And the way, the strong version of how I understand your colleague's argument is that a competent lawyer would have known to have challenged the realness of the firearm. Your Honor, I think that puts every competent lawyer who has ever pleaded out a client to a 924C charge in a very difficult position before this court. The competent lawyer below, whose client was charged in a six count indictment, saw and obtained for his client a very favorable plea agreement pursuant to which under a 371 theory, he admitted to three overt acts of robbery, a residential burglary, and a lengthy aggravated identity theft and wire fraud scheme. Far from being ineffective, counsel below secured his client a very favorable result. And in the context of an ineffective assistance of counsel claim in a plea proceeding, there must be a showing that there was some alternative favorable path that the client would have taken or that the client would have chosen to forego the government's plea offer and instead proceed to trial. And that simply doesn't exist here. May I ask why we shouldn't let this go back to the district court on the thorough grounds that it's letting go as a habeas if Mr. Rodriguez wants to claim that, as far as he knew, it wasn't a gun and counsel never discussed that with him. He can file an affidavit in support of his habeas petition. Why should we get into this at this point? If Your Honor wishes to send it back to Judge Roman, then of course Your Honor can do that. But if Your Honor can find on this record that counsel was not ineffective, then the court can simply deny the claim. OK. OK. And what's your instruction? I'm sorry, Mr. King. I hope you have something on that comment. We simply don't have the information that will permit us to make a ruling one way or the other. So I don't see that there's any reasonable course other than to leave the defendant to make a 2255 motion if he wants to pursue it. He's bringing us an ineffective assistance of counsel where there is no record to go into it. So I don't see if there's any reasonable course you can take other than just to decline, to rule on it, and let him bring it up as a habeas. I would say, Your Honor, it's more learned in regard than I am. But on the record of a six-count indictment with two seven-year mandatory minimum charges, a plea to only one of those charges and a 371 conspiracy charge was relatively favorable. Yes, Your Honor. Turning to the jury charge, as the court is aware, a jury charge is reversed only for prejudicial error. Here, the jury charge that was given mirrored in every respect the definition of a firearm under 921A3. Although counsel made a reference to the necessity of operability, which is not a federal necessity. So the jury charge mirrored in every respect the definition of a firearm. And then there was a colloquial gloss on the definition of a firearm, which was, I instruct you that a gun is a firearm. Which, in the context of the evidence of the case situated for the jurors, what it means for a firearm to be any weapon which will or is designed to or may readily be converted to expel a projectile by the action of an explosive, which is the beginning of the instruction that Judge Roman gave. But the defense suggests that that was confusing. Because on the one hand, it said that it had ejected projectiles. But on the other hand, it made a categorical statement about guns being firearms when the argument is that not all guns are. How do you respond to that? I think in view of the preceding statement and viewing the jury instruction as a whole, there is no risk that the jury is going to be confused that what Judge Roman meant was, in fact, that an imitation gun or a pellet gun or a facsimile gun is designed to. So the second statement is harmless because when you read it in conjunction with the first statement, is that the government's point here? That's the government's position, Your Honor. That the jury instruction has to be viewed as a whole. And that in view of the first sentence, which mirrored the statutory definition, the second statement was harmless. But what's the justification for not giving the charge that the defendant requested? The court is obligated to charge on the theory of the defense. And Molina's counsel asked for a charge on the theory of the defense. And the district court not only refused to give it, but added this statement that a gun is a firearm when that's a very problematic assertion. A gun is not necessarily a firearm. There are guns that aren't firearms because they operate by a different method than explosion. I believe the justification that Judge Roman gave on the record was that he thought the requested charge was an unnecessary gloss on the statutory definition of a firearm, which it was. And Judge Roman's decision not to give the extra charge that a pellet or imitation or facsimile or toy gun is not a firearm did not prevent counsel from spending nearly 50% of his closing argument arguing to the jury that they had to find that this was a real firearm, not a toy gun, not a pellet gun. That argument still was made before the jury. And I do not believe that it's possible for the jury to have been confused that Judge Roman meant that a gun could be a pellet, imitation, or facsimile gun. Well, that goes to the harmlessness of it. Let me ask you on that. Am I correct in understanding that the government in its summation and rebuttal did not suggest otherwise that with respect to pellet guns or facsimile guns? The government did not suggest that a pellet or facsimile gun would suffice to satisfy the statutory definition of a firearm, Your Honor. It did not. And the overwhelming evidence at trial, including the defendant's own lengthy testimony, was that he, in fact, possessed real firearms. Unless Your Honors have any further questions. I don't see why the government, part of the government's job is to make sure that the district court produces a good error-free record. And I can't understand why when the defendant asks for a charge that the judge tell the jury what is the theory of the defense, why wouldn't the government say, give him that charge, Judge. He's entitled to it. Just give him the charge. Even if it's not necessary, even if you've stated the elements, this is the argument he's making. He's entitled to a charge on that. Why would you want to have this case up for appeal? Just because the judge refused to give a charge that simply stated the defendant is asking for the theory of the defense is that the gun has not been proved by the government that the gun operated based on explosion in the project. I think Your Honor is correct. And with the benefit of hindsight and two additional trials under my belt, I would agree with Your Honor that it is regrettable that the government argued against that charge. But that nevertheless, the error was harmless, that the jury instruction did not risk confusion, that the overwhelming evidence at trial had nothing to do with pellet or facsimile guns, that the government did not suggest that a pellet or facsimile gun would satisfy the statutory definition, and that counsel nevertheless spent nearly 40% several pages of the transcript arguing that a toy gun would be insufficient to convict. Now, can I ask? What was the evidence? I'm sorry. Go ahead. Go ahead. I was just going to ask, what was the evidence by which you proved that the gun operated by virtue of explosion? The defendant in his testimony reviewed, among other things, a text message that he sent to an associate requesting explosive ammunition for a .45. Can I ask, do you think that they were equally harmless? In other words, was the jury instruction equally harmless for both robberies, whereas the evidence suggests that there were at least witnesses that said that in one of the robberies it sounded plastic and didn't make that same allocation? So you're thinking about another robbery? I do believe they were equally harmless. I recall the testimony Your Honor is referencing. And with respect to the same robbery, Detective Robert Gilboa explained to the jury how on his very own service pistol, part of the pistol is made of polymer and part of the pistol is made of steel. And so that when he racked the slide, which is what the witness Troy Consalvo was talking about when he said it sounded plastic, that when Detective Gilboa racked the slide of his very own firearm issued to him by the New Melbourne Police Department, it sounds plastic. Thank you. With regard to the jury instruction point, Your Honors, the government misled the court when it said, well, they're not entitled to a theory of defense instruction. That's not the court's job. The court's job is to instruct on the law, not on a theory of defense. That's what they said. And the court brought it. And then, although it's true that defense counsel argued during summation that this was not a, quote, unquote, firearm, could have been a BB gun or pellet gun or whatever, the instruction that the court gave completely undermined that defense. It said, OK, you spent 10% or whatever it was of your summation talking about, well, maybe this wasn't a real firearm. But I'm telling you, jury, I'm telling you that all guns are firearms, period. So what's a jury supposed to do? Well, defense counsel makes one argument, and the court essentially negates that by saying, no, essentially. But you do have to read it with the first sentence, too, that it does have to be something that ejects a projectile by means of an explosive. Then the most you're saying, Your Honor, is that there are contradictory messages sent to the jury concerning that issue. And this court has made very clear that when those kinds of contradictory messages are sent to the jury, the court will not assume that the jury chose one over the other. And this mistake happened because of the government, and now the government is essentially asking you to excuse their errors and to find harmless error. Here's an example of harmless error in that very context, which this court decided in the United States versus Sedano, which we cite in our brief. It says, Government cooperators and victims testified at trial regarding the use of guns during the robberies, and the government introduced two revolvers recovered by police, matching the color and calibers described on the stand by police officers, cooperators, and victims, along with evidence that the guns were loaded with bullets. The bullets that the police recovered were also introduced as exhibit. Because the weight of the trial evidence bearing on this element was overwhelming and essentially uncontroverted in this case, we conclude that any error in the jury instructions was harmless. That's not what happened here. With regard to the New Milford robbery, although witness Marcelino White testified that he had to conclude it was a real gun, again using the word gun, he also acknowledged that when interviewed by the prosecutors and law enforcement, he told them he thought the object was a plastic gun, a pellet gun. So he thought, when he originally spoke to prosecutors, that it was a pellet gun. That's what he said. Employee Troy Consalvo identified the object displayed by the robber as a gun, but indicated it sounded plastic. Regarding the 2019 mail pack robbery, employee Christopher Salara testified that the object looked like a handgun. However, there was no evidence that he had any familiarity or expertise in firearms. And he also testified he never felt the object. He did not know whether it was heavy or light. He did not know the texture of the object's material. And when Carmel Police Detective Michael Russo testified, he reviewed the surveillance video of the robbery, and he spoke with Mr. Salara at the scene, and he said, I can't tell from the surveillance video if it's a real gun or not. Now, he noted that whatever he saw could be racked, but we all know, and we cited at length evidence, that a pellet gun can be racked. A BB gun can be racked. A pellet gun can take a magazine. A BB gun can take a magazine. So there's no question that there was more than sufficient evidence for the jury to find that the government failed to prove beyond a reasonable doubt that this was a firearm. In fact, there was no conclusive evidence in this record whatsoever that it was a firearm. And where a very clear and correct instruction was requested that would have clarified the issue, not only did the judge deny that request, but then he gave a completely contrary instruction that misled the jury and may well have resulted in the convictions for the 924C offenses. That's not homosexual. If the court has any other questions with regard to the search issue, I'd be happy to answer them. Otherwise, I've concluded. I'm wondering if the presider would be willing to direct the parties to file briefs of no more than 10 pages on the question of a corrected affidavit providing probable cause so that they can submit those within two weeks of today. Including the question whether the corrected affidavit doctrine permits the addition of information that wasn't included at all in the first affidavit which was in the government's possession. Are there any further questions? Thank you very much. Thank you. Thank you. Now, that concludes arguments on the cases for the field commons today. We do have a few more cases. Thank you. We have two cases on commission, those being United States v. Garam, which is 22690, and Rinaldi v. Newell, 21530. Thank you very much for your arguments today. Thank you to the clerk's office and the security officers for keeping us safe. I will now ask that the court be adjourned. Final hearing. Thank you.